IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  20-1112 |
| | ) | |
| STAR MANAGEMENT CORP.; MONSERRATE | ) | |
| ELDERLY LIMITED PARTNERSHIP, S.E.; | ) | |
| SUNRISE ELDERLY LIMITED PARTNERSHIP, S.E.; | ) | |
| MOROVIS HOUSING ASSOCIATES LIMITED | ) | |
| PARTNERSHIP, S.E.; ISABELA ELDERLY LIMITED | ) | |
| PARTNERSHIP, S.E.; PATILLAS ELDERLY LIMITED | ) | |
| PARTNERSHIP, S.E.; and FLORIDA ELDERLY | ) | |
| LIMITED PARTNERSHIP, S.E., | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT AND DEMAND FOR BENCH TRIAL**

The United States of America alleges as follows:

**NATURE OF THE ACTION**

1.  The United States brings this action to enforce the Fair Housing Act, as amended ("FHA"), 42 U.S.C. §§ 3601-3619; the FHA's implementing regulations, 24 C.F.R. §§ 100.200-205; Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181-12189; and the ADA Standards for Accessible Design, *see* 28 C.F.R. Pt. 36 Appendices A & D ("ADA Standards").  As set forth below, the United States alleges that Defendants—the owners, developers, and builders of numerous residential apartment complexes—have discriminated against persons with disabilities by failing to design and construct covered multifamily dwellings and associated places of public accommodation to be accessible to persons with disabilities.

1

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, 42 U.S.C. § 3614(a) and 42 U.S.C. § 12188(b)(1)(B).

3.  Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged in this action occurred in this District.

## SUBJECT PROPERTIES

4.  Defendants have participated in the design, construction, or design and construction of one or more of the following properties (collectively, the "Subject Properties"):

5.  Monserrate Elderly is a senior apartment complex located at PR 2 Km. 164.0 – Lavarderos Ward, Hormiguerso, PR  00660.  It is a five-level building with 31 single-story units, all of which are serviced by elevator.  It has a rental office, a manager's office, a common meeting/multipurpose room with kitchen, laundry facilities, a mail center, a dumpster facility, an outdoor seating area, and common bathrooms for residents and prospective renters.  The property was built for first occupancy in 2003 and was built with Low-Income Housing Tax Credits.

6.  Sunrise Elderly is a senior apartment complex located at Avenida Los Mirtos #198 URB., Hyde Park, San Juan, PR  00927.  Sunrise Elderly is an eight-level building with 42 single-story units, all of which are serviced by elevators.  It has a rental office, a manager's office, a common meeting/multipurpose room with kitchen, a social service office, laundry facilities, common bathrooms for residents and prospective renters, a mail center, and a dumpster facility.  The property was built for first occupancy in 2005 and was built with Low-Income Housing Tax Credits.

7.  Morovis Elderly is a senior apartment complex located at Barrio Montellanos,

Morovis, PR.   The property is a six-level building with 92 single-story units, all of which are serviced by elevators.  The property has an administrative center with a rental office, a manager's office, a community center/multipurpose room with kitchen, laundry facilities, a mail center, a dumpster facility, and common bathrooms for residents and prospective renters.  The property was built for first occupancy in 2006 and was built with Low-Income Housing Tax Credits and is part of the U.S. Department of Housing & Urban Development's Section 8 Project-Based Housing Choice Voucher Program ("HUD Project-Based Voucher Program").

8.  Isabela Elderly is a senior apartment complex located at Carretera PR 112 KM, 1.4 BO., Mora, Isabela, PR  00662.  Isabela Elderly is a three level building with 24 single-story units, all of which are serviced by elevators.  It has a rental office, a manager's office, a common meeting/multipurpose room with kitchen, laundry facilities, a picnic/patio area, a garden area, a dumpster facility, a mail center, and common bathrooms for residents and prospective renters. The property was built for first occupancy in 2007 and was built with Low-Income Housing Tax Credits.

9.  Patillas Elderly is a senior apartment complex located at Carretera PR 3 KM 122.3 Interior Barrio Mamey, Patillas, PR  00723.  It is a five-level building with 120 single-story units, all of which are serviced by elevators.  It has a rental office, a manager's office, a common meeting/multipurpose room with kitchen, laundry facilities, a picnic/patio area, a dumpster facility, a mail center, and common bathrooms for residents and prospective renters.  The property was built for first occupancy in 2008 and was built with Low-Income Housing Tax Credits and is part of the HUD Project-Based Voucher Program.

10.  Florida Elderly is a senior apartment complex located at Calle Munoz Rivera #73,

3

BO., Pueblo, Florida, PR  00650.  It is a seven-level building with 72 single-story units, all of which are serviced by elevators.  It has a rental office, a manager's office, a common meeting/multipurpose room with kitchen, laundry facilities, a picnic area, a dumpster facility, a mail center, and common bathrooms for residents and prospective renters.  Florida Elderly was built for first occupancy in 2012 and was built with Low-Income Housing Tax Credits and is part of the HUD Project-Based Voucher Program.

## DEFENDANTS

11.  Defendant Star Management Corp. ("Star Management") is a construction, development, and management company based in Guaynabo, PR.  Star Management developed each of the Subject Properties and has an ownership interest in each of the companies that owns the Subject Properties.  Star Management Corp. is a for-profit Puerto Rico domestic corporation formed on January 31, 1994.  Its business address is Urb. Alto Apollo Turnuesa #2116, Guaynabo, PR  00969.  Jorge L. Trigo is the president.  Star Management began developing properties using Low-Income Housing Tax Credits in 2003.  Star Management was involved in the design and construction of the Subject Properties.

12.  Defendant Monserrate Elderly Limited Partnership, S.E. was formed as a New York domestic limited partnership on August 29, 2001.  Its business address is PMB 140 – 53 Esmeralda Ave., Guaynabo, PR  00969.  Star Management is the general partner of Monserrate Elderly Limited Partnership, S.E.  Star Management and Monserrate Elderly Limited Partnership, S.E. were involved in the design and construction of Monserrate Elderly.

13.  Defendant Sunrise Elderly Limited Partnership, S.E. was formed as a New York domestic limited partnership on March 25, 2001.  Its business address is PMB 140, 53 Esmeralda Avenue, Guaynabo, PR  00969.  Star Management is a general partner of Sunrise Elderly

Limited Partnership, S.E.  Star Management and Sunrise Elderly Limited Partnership, S.E. were involved in the design and construction of Sunrise Elderly.

14.   Defendant Morovis Housing Associates Limited Partnership, S.E. was formed as a New York domestic limited partnership on August 30, 2001.  Its business address is PMB 140 – 53 Esmeralda Avenue, Guaynabo, PR  00969. Star Management is the general partner of Morovis Housing Associates Limited Partnership, S.E.  Star Management and Morovis Housing Associates Limited Partnership, S.E. were involved in the design and construction of Morovis Elderly.

15.   Defendant Isabela Elderly Limited Partnership, S.E. was formed as a New York domestic limited partnership on August 30, 2001.  Its business address is PO Box 360927, San Juan, PR  00936.  Star Management is the general partner of Isabela Elderly Limited Partnership, S.E.  Star Management and Isabela Elderly Limited Partnership, S.E. were involved in the design and construction of Isabela Elderly.

16.   Defendant Patillas Elderly Limited Partnership, S.E. was formed as a New York domestic limited partnership on January 7, 2005.  Its business address is PMB 140 – 53 Esmeralda Avenue, Guaynabo, PR  00969.  Star Management is the general partner of Patillas Elderly Limited Partnership, S.E.  Star Management and Patillas Elderly Limited Partnership, S.E. were involved in the design and construction of Patillas Elderly.

17.   Defendant Florida Elderly Limited Partnership, S.E. was formed as a New York domestic limited partnership on June 23, 2009.  Its business address is Urb. Alto Apollo – 1216 Turquesa Street, Guaynabo, PR  00969.  Star Management is the general partner of Florida Elderly Limited Partnership, S.E.  Star Management and Florida Elderly Limited Partnership, S.E. were involved in the design and construction of Florida Elderly.

18.  This complaint refers collectively to the following defendants as "Defendants": Star Management Corp., Monserrate Elderly Limited Partnership, S.E., Sunrise Elderly Limited Partnership, S.E., Morovis Housing Associates Limited Partnership, S.E., Isabela Elderly Limited Partnership, S.E., Patillas Elderly Partnership S.E., and Florida Elderly Limited Partnership, S.E.

## FACTUAL ALLEGATIONS

### Fair Housing Act Allegations

19.  The Subject Properties described above were designed and constructed for first occupancy after March 13, 1991.

20.  The Subject Properties described above are "dwellings" and contain "dwellings" within the meaning of 42 U.S.C. § 3602(b).

21.  All of the units in the Monserrate Elderly, Sunrise Elderly, Morovis Elderly, Isabela Elderly, Patillas Elderly, and Florida Elderly properties described above are "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f).

22.  The covered multifamily dwellings at the Subject Properties described above are subject to the accessibility requirements of 42 U.S.C. § 3604(f).

23.  The United States obtained and reviewed property plans related to the Subject Properties.  The United States also inspected the exterior routes, public and common use areas, and one of each unit type at each Subject Property.  These plans and inspections show internal, inaccessible features at covered units, including, but not limited to, switches mounted at non-compliant heights, inaccessible routes through the units, and bathrooms and kitchens with insufficient clear floor space.  The inspections further show inaccessible features in the common

use areas, including but not limited to, excessive slopes, lack of accessible parking, barriers at primary entrance doors, inaccessible mail boxes, and inaccessible bathrooms.

24.   The following is an illustrative, but not exhaustive, list of inaccessible features created and caused by Defendants in designing and constructing the Subject Properties.

**Monserrate Elderly**

25.   The inaccessible features at Monserrate Elderly include, but are not limited to:

a.   barriers at amenities provided onsite, such as the mail and dumpster facilities, including lack of an accessible route from units to the onsite amenities, and amenities mounted at heights too high for wheelchair users to reach from a seated position;

b.   barriers in the approach walkways leading to building primary entry doors, including running slopes[1] and cross slopes that are too steep to allow wheelchair users to traverse safely.  For example, there are running slopes that are greater than 5% without handrails, cross slopes greater than 2%, curb ramps with slopes greater than 8.33%, and unbeveled changes in level greater than 1/4 inch;

c.   barriers to accessible parking, including curb ramps that protrude into the accessible aisles, and lack of accessible routes from parking to units;

d.   insufficient space in common use kitchens that prevent wheelchair users from reaching and using appliances.  For example, there is less than 30-inch by 48-

---

[1]  A "running slope" is "the slope that is parallel to the direction of travel," and a "cross slope" is a slope that is perpendicular to the direction of travel.  ICC/ANSI A117.1-2003.  Running and cross slopes are measured in a ratio of rise to run (or height to length).  "For example, if a principal entrance is ten feet from a [designated accessible parking spot], and the principal entrance is raised one foot higher than the [designated accessible parking spot], then the slope is 1/10 X 100 = 10%."  HUD's Fair Housing Act Design Manual, published by HUD in 1996, updated in 1998, 1.2.

inch clear floor space at the range for a side approach and less than 28-inch clear knee space for a forward approach at the sink;

e.  light switches in common use areas and in units that are mounted higher than 54 inches, which is too high for wheelchair users to reach from a seated position;

f.  routes into and through units that are too narrow, severely impacting the ability of wheelchair users to pass through.  For example, passageways are less than 36 inches wide;

g.  insufficient space in unit kitchens to allow wheelchair users to reach and use appliances.  For example, there is less than 30-inch by 48-inch clear floor space centered on kitchen appliances; and

h.  insufficient space in bathrooms to allow wheelchairs users to enter the bathroom and close the door and to safely transfer to and from the toilet.  For example, there is less than 30-inch by 48-inch clear floor space outside the in-swing of the door, and toilets have a centerline less than 18 inches from a sidewall.

### Sunrise Elderly

26.  The inaccessible features at Sunrise Elderly include, but are not limited to:

a.  barriers at amenities provided onsite, such as the mail and dumpster facilities, including lack of an accessible route from units to the onsite amenities, and amenities mounted at heights too high for wheelchair users to reach from a seated position;

b.  barriers in the approach walkways leading to primary entry doors, including one or more steps and running slopes and cross slopes that are too steep to allow wheelchairs users to traverse safely.  For example, there are running slopes that

are greater than 5% without handrails, cross slopes greater than 2%, curb ramps with slopes greater than 8.33%, and unbeveled changes in level greater than 1/4 inch;

c.  barriers at accessible routes, including wall-mounted objects that protrude too far into the circulation space and could injure persons with visual impairments using the route.  For example, wall-mounted objects protrude more than 4 inches and are mounted between 27 and 80 inches above the finished floor;

d.  barriers at common use doors in the administrative areas, including twisting-style locking hardware rather than lever-style locking hardware, which makes it difficult to operate or open, and changes in level greater than 1/4 inch without a bevel, which severely impacts the ability of wheelchair users to traverse safely;

e.  barriers to accessible parking, including a lack of an accessible route from parking to units;

f.  insufficient space in common use kitchens to allow wheelchair users to reach and use appliances.  For example, there is less than 30-inch by 48-inch clear floor space at the range for a side approach;

g.  light switches in common areas that are mounted higher than 54 inches, which is too high for wheelchair users to reach from a seated position;

h.  insufficient space in unit kitchens to allow wheelchair users to reach and use appliances.  For example, there is less than 30-inch by 48-inch clear floor space centered on kitchen appliances; and

i.    insufficient space in bathrooms to allow wheelchair users to safely transfer to and from the toilet.  For example, toilets have a centerline less than 18 inches from a sidewall.

**Morovis Elderly**

27.   The inaccessible features at Morovis Elderly include, but are not limited to:

a.    barriers at amenities provided onsite, such as the mail and dumpster facilities, including lack of an accessible route from units to the onsite amenities, and amenities mounted at heights too high for wheelchair users to reach from a seated position;

b.    barriers in the approach walkways leading to building primary entry doors, including running slopes and cross slopes that are too steep to allow wheelchair users to traverse safely.  For example, there are running slopes that are greater than 5% without handrails, cross slopes greater than 2%, curb ramps with slopes greater than 8.33%, and unbeveled changes in level greater than 1/4 inch;

c.    barriers on the accessible route to units, including wall-mounted objects that protrude too far into the circulation space and could injure persons with visual impairments using the route.  For example, wall-mounted objects protrude more than 4 inches and are mounted between 27 and 80 inches above the finished floor;

d.    barriers at common use doors in the administrative areas, including twisting-style locking hardware rather than lever-style locking hardware, which makes it difficult to operate or open, and changes in level greater than 1/4 inch without a bevel, which severely impacts the ability of wheelchair users to traverse safely;

e. barriers to accessible parking, including ramps with slopes greater than 8.33% and lack of an accessible route to units;

f. insufficient space in common use kitchens to allow wheelchair users to reach and use appliances.  For example, there is less than 30-inch by 48-inch clear floor space at the sink for a side approach;

g. light switches in common areas and in units that are mounted higher than 54 inches, which is too high for wheelchair users to reach from a seated position;

h. insufficient space in kitchens to allow wheelchair users to reach and use appliances.  For example, there is less than 30-inch by 48-inch clear floor space centered on kitchen appliances, and less than 28-inch knee height for a forward approach under kitchen sinks; and

i. insufficient space in bathrooms to allow wheelchair users to safely transfer to and from the toilet.  For example, toilets have a centerline less than 18 inches from a sidewall.

**Isabela Elderly**

28. The inaccessible features at Isabela Elderly include, but are not limited to:

a. barriers at amenities provided onsite, such as the picnic area and mail and dumpster facilities, including lack of an accessible route from units to the onsite amenities, and amenities mounted at heights too high for wheelchair users to reach from a seated position;

b. barriers in the approach walkways leading to primary entry doors, including running slopes and cross slopes that are too steep to allow wheelchair users to traverse safely.  For example, there are running slopes that are greater than 5%

without handrails, cross slopes greater than 2%, curb ramps with slopes greater than 8.33%, and unbeveled changes in level greater than 1/4 inch;

c.  barriers on the accessible route to units, including wall-mounted objects that protrude too far into the circulation space and could injure persons with visual impairments using the route.  For example, wall-mounted objects protrude more than 4 inches and are mounted between 27 and 80 inches above the finished floor;

d.  barriers at common use doors in the administrative areas, including twisting-style locking hardware rather than lever-style locking hardware, which makes it difficult to operate or open, and changes in level greater than 1/4 inch without a bevel, which severely impacts the ability of wheelchair users to traverse safely;

e.  barriers to accessible parking, including ramps that protrude into the accessible aisle, and lack of accessible routes from parking to units;

f.  light switches in common areas and in units that are mounted higher than 54 inches, which is too high for wheelchair users to reach from a seated position;

g.  insufficient space in kitchens to allow wheelchair users to reach and use appliances.  For example, there is less than 30-inch by 48-inch clear floor space centered on kitchen appliances for a side approach or less than 28-inch knee height and less than 30-inch width for a forward approach; and

h.  insufficient space in bathrooms to allow wheelchair users to safely transfer to and from the toilet.  For example, toilets have a centerline less than 18 inches from a sidewall.

**Patillas Elderly**

29. The inaccessible features at Patillas Elderly include, but are not limited to:

    a.  barriers at amenities provided onsite, such as the picnic area and mail and dumpster facilities, including lack of an accessible route from units to the onsite amenities, and amenities mounted at heights too high for wheelchair users to reach from a seated position;

    b.  barriers in the approach walkways leading to primary entry doors, including running slopes and cross slopes that are too steep to allow wheelchair users to traverse safely.  For example, there are running slopes that are greater than 5% without handrails, cross slopes greater than 2%, curb ramps with slopes greater than 8.33%, and unbeveled changes in level greater than 1/4 inch;

    c.  barriers on the accessible route to units, including wall-mounted objects that protrude too far into the circulation space and could injure persons with visual impairments using the route.  For example, wall-mounted objects protrude more than 4 inches and are mounted between 27 and 80 inches above the finished floor;

    d.  common use doors in the administrative areas that are less than 32 inches wide and too narrow for wheelchair users, doors with twisting-style locking hardware rather than lever-style locking hardware, which makes it difficult to operate or open, and changes in level greater than 1/4 inch without a bevel, which severely impacts the ability of wheelchair users to traverse safely;

    e.  barriers to accessible parking, including ramps that protrude into the accessible aisle, and lack of accessible routes from parking to units;

    f.   light switches in units that are mounted higher than 54 inches, which is too high for wheelchair users to reach from a seated position;

    g.   routes into and through units that are too narrow, severely impacting the ability of wheelchair users to pass through.  For example, passageways are less than 36 inches wide;

    h.   insufficient space in kitchens to allow wheelchair users to reach and use appliances.  For example, there is less than 30-inch by 48-inch clear floor space centered on kitchen appliances for a side approach; and

    i.   insufficient space in bathrooms to allow wheelchair users to safely transfer to and from the toilet.  For example, toilets have a centerline less than 18 inches from a sidewall.

**Florida Elderly**

30.  The inaccessible features at Florida Elderly include, but are not limited to:

    a.   barriers at amenities provided onsite, such as the mail and dumpster facilities, including lack of an accessible route from units to the onsite amenities, and amenities mounted at heights too high for wheelchair users to reach from a seated position;

    b.   barriers in the approach walkways leading to primary entry doors, including running slopes and cross slopes that are too steep to allow wheelchairs users to traverse safely.  For example, there are running slopes that are greater than 5% without handrails, cross slopes greater than 2%, and curb ramps with slopes greater than 8.33%;

c.   barriers to accessible parking, including lack of accessible routes from parking to units;

d.   switches in common areas and in units that are mounted higher than 54 inches, which is too high for wheelchair users to reach from a seated position;

e.   routes into and through units that are too narrow and that include abrupt level changes, severely impacting the ability of wheelchair users to pass through.  For example, passageways are narrower than 36 inches, and there are unbeveled changes in level greater than 1/4 inch;

f.   insufficient space in kitchens to allow wheelchair users to reach and use appliances and to turn around.  For example, there is less than 28-inch clear knee height and 30-inch clear width for a forward approach under kitchen sinks, and kitchens have less than 40-inch maneuvering space between opposing counters or appliances; and

j.   insufficient space in bathrooms to allow wheelchair users to safely transfer to and from the toilet.  For example, toilets have a centerline less than 18 inches from a sidewall.

## ADA Allegations

31.  The leasing offices and the bathrooms for use by potential renters at the Subject Properties and their surrounding areas were designed and constructed for first occupancy after January 26, 1993, and are places of public accommodation within the meaning of the ADA, 42 U.S.C. § 12181(7)(E) and 28 C.F.R. § 36.104.  These areas, therefore, are required to meet the accessibility requirements of the ADA Standards.

32.  The leasing offices and the bathrooms for use by potential renters at the Subject

Properties and their surrounding areas were not designed and constructed so that they are readily accessible to and usable by individuals with disabilities, as required by the ADA, 42 U.S.C. § 12183(a)(1).  These offices, bathrooms, and surrounding areas fail to comply with the ADA Standards.

33.  The inaccessible features at the leasing offices and the bathrooms for use by potential renters at the Subject Properties include, but are not limited to:

a.  curb ramps leading to the rental offices that are too steep and that have abrupt level changes that severely impact the ability of wheelchair users to traverse safely.  For example, there are unbeveled changes in level greater than 1/4 inch and running slopes greater than 8.33%;

b.  walkways to rental offices with running slopes and cross slopes that are too steep to allow wheelchair users to traverse safely.  For example, there are running slopes that are greater than 5% without handrails, cross slopes greater than 2%, and unbeveled changes in level greater than 1/4 inch;

c.  accessible parking that lacks required accessibility features, including a lack of signage for accessible van parking; and

d.  bathrooms for use by potential renters with barriers that severely impact the ability of wheelchair users to transfer to and from the toilet, operate locking devices on doors, and reach light switches from a seated position.  The bathrooms lack grab bars around the toilet or have them in noncompliant locations, toilets have centerlines that are not between 16 and 18 inches from a sidewall, twisting-locks on doors make it difficult to grasp and operate, and light switches are mounted higher than 54 inches above the finished floor.

## FAIR HOUSING ACT CLAIMS

34.  The United States re-alleges and incorporates by reference the allegations set forth above.

35.  The conduct of Defendants described above violates 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C).

36.  Defendants violated 42 U.S.C. § 3604(f)(3)(C), and 24 C.F.R. § 100.205(c), by failing to design and construct covered multifamily dwellings in such a manner that:

    a.  the public use and common use portions of the dwellings are readily accessible to and usable by persons with disabilities;

    b.  all premises within such dwellings contain the following features of adaptive design:

        i.  an accessible route into and through the dwelling;

        ii.  light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; and

        iii.  usable kitchens and bathrooms, such that an individual using a wheelchair can maneuver about the space.

37.  Defendants, through the actions and conduct referred to in the preceding paragraph, have:

    a.  discriminated in the sale or rental of, or otherwise made unavailable or denied, dwellings to buyers or renters because of disability, in violation of 42 U.S.C. § 3604(f)(1) and 24 C.F.R. § 100.202(a);

    b.  discriminated against persons in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection

with a dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2) and 24 C.F.R. § 100.202(b); and

    c.   failed to design and construct dwellings in compliance with the accessibility and adaptability features mandated by 42 U.S.C. § 3604(f)(3)(C) and 24 C.F.R. § 100.205.

38.   The conduct of Defendants described above constitutes:

    a.   a pattern or practice of resistance to the full enjoyment of rights granted by the FHA, 42 U.S.C. §§ 3601-3619, within the meaning of 42 U.S.C. § 3614(a); and

    b.   a denial to a group of persons of rights granted by the FHA, 42 U.S.C. §§ 3601-3619, which denial raises an issue of general public importance, within the meaning of 42 U.S.C. § 3614(a).

39.   Persons who may have been the victims of Defendants' discriminatory housing practices are aggrieved persons under 42 U.S.C. § 3602(i), and may have suffered injuries because of the conduct described above.

40.   The conduct of Defendants described above was intentional, willful, and taken in disregard of the rights of others.

## ADA CLAIMS

41.   The United States re-alleges and incorporates by reference the allegations set forth above.

42.   Defendants violated Title III of the ADA by designing and constructing places of public accommodation, including leasing offices for multifamily dwellings and bathrooms for use by prospective renters, without ensuring that these places of public accommodation are

18

readily accessible to persons with disabilities to the maximum extent feasible, as required by 42 U.S.C. § 12183(a)(1).

43.   The conduct of Defendants described above constitutes:

    a.   a pattern or practice of discrimination within the meaning of 42 U.S.C. § 12188(b)(1)(B)(i) and 28 C.F.R. § 36.503(a); and

    b.   unlawful discrimination that raises an issue of general public importance within the meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and 28 C.F.R. § 36.503(b).

44.   Persons who may have been victims of Defendants' discriminatory conduct are aggrieved as defined in 42 U.S.C. § 12188(b)(2)(B), and may have suffered injuries because of the conduct described above.

45.   The conduct of Defendants described above was intentional, willful, and taken in disregard of the rights of others.

## OTHER MULTIFAMILY PROPERTIES

46.   Defendants' pattern or practice of failing to design and construct dwellings, public and common use areas, and associated places of public accommodation in compliance with the FHA and the ADA, as alleged in this complaint, may extend to other multifamily properties and, absent injunctive relief, to other multifamily properties that may be designed and constructed in the future.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court enter an order that:

    a.   Declares that the conduct of Defendants, as alleged in this complaint, violates the Fair Housing Act;

b.  Declares that the conduct of Defendants, as alleged in this complaint, violates the Americans with Disabilities Act;

c.  Enjoins Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with any of them from:

    i.  failing or refusing to bring the dwelling units and public and common use areas at covered multifamily properties in which each defendant was or is involved in the design and/or construction into full compliance with the FHA;

    ii.  failing or refusing to conduct FHA compliance surveys to determine whether the retrofits ordered in paragraph (i) above or otherwise performed comply with the FHA;

    iii.  designing or constructing any covered multifamily dwellings and public and common use areas in the future that do not comply with the FHA; and

    iv.  failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct.

d.  Enjoins Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with any of them from:

    i.  failing or refusing to bring the public accommodations, including leasing offices, bathrooms for use by prospective renters, and other public use areas, at covered multifamily properties in which each defendant was or is

involved in the design or construction, into full compliance with the ADA and the ADA Standards;

ii.  failing or refusing to conduct ADA compliance surveys to determine whether the retrofits ordered in paragraph (i) above or otherwise performed comply with ADA and the ADA Standards;

iii.  designing or constructing any public accommodations in the future that do not comply with the ADA and the ADA Standards; and

iv.  failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct.

e.  Enjoins Defendants from engaging in conduct that impedes any retrofits required to bring the Subject Properties, including covered multifamily dwelling units and public and common use areas, into compliance with the FHA and the public accommodations areas into compliance with the ADA and the ADA Standards in a prompt and efficient manner while minimizing inconvenience to the residents and visitors at the properties; and

f.  Awards monetary damages under 42 U.S.C. § 3614(d)(1)(B) and 42 U.S.C. § 12188(b)(2)(B) to all persons harmed by Defendants' discriminatory practices.

The United States further prays for such additional relief as the interests of justice may require.

Dated: February 27, 2020

Respectfully submitted,

WILLIAM P. BARR
Attorney General

W. STEPHEN MULDROW
United States Attorney
District of Puerto Rico

/s/ Eric S. Dreiband
ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

/s/ Hector E. Ramirez
HECTOR E. RAMIREZ
USDC-PR No. 214902
Assistant United States Attorney
Torre Chardón, Suite 1201
350 Carlos Chardón Street
San Juan, PR  00918
Phone: (787) 282-1845
E-mail: hector.e.ramirez@usdoj.gov

/s/ Sameena S. Majeed
SAMEENA SHINA MAJEED
Chief

/s/ Noah D. Sacks
ANDREA STEINACKER
Special Litigation Counsel
RYAN G. LEE
Wis. Bar No. 1041468
NOAH SACKS
CA. Bar. No. 246694
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
150 M Street, N.E., 8th Floor
Washington, DC 20530
Phone: (202) 305-3109
Fax: (202) 514-1116
E-mail: ryan.lee@usdoj.gov
E-mail: noah.sacks@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO·RICO

### CATEGORY SHEET

**You must accompany your complaint with this Category Sheet, and the Civil Cover Sheet (JS-44).**

| | |
|---|---|
| Attorney Name (Last, First, MI): | Ramirez-Carbo, Hector E. |
| USDC-PR Bar Number: | 214902 |
| Email Address: | hector.e.ramirez@usdoj.gov |

1.  Title (caption) of the Case (provide only the names of the <u>first</u> party on <u>each</u> side):

    Plaintiff: | United States of America

    Defendant: | Star Management

2.  Indicate the category to which this case belongs:

    ☒ Ordinary Civil Case
    ☐ Social Security
    ☐ Banking
    ☐ Injunction

3.  Indicate the title and number of related cases (if any).

4.  Has a prior action between the same parties and based on the same claim ever been filed before this Court?

    ☐ Yes
    ☒ No

5.  Is this case required to be heard and determined by a district court of three judges pursuant to 28 U.S.C. § 2284?

    ☐ Yes
    ☒ No

6.  Does this case question the constitutionality of a state statute? (See, Fed.R.Civ. P. 24)

    ☐ Yes
    ☒ No

Date Submitted: | 02/27/2020

rev. Dec. 2009

| Print Form | Reset Form |

JS 44   (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

**DEFENDANTS**

Star Management Corp., et. als.

**(b)**  County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Guaynabo, P.R.
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
AUSA Hector E. Ramirez-Carbo
US Attorney's Office, 350 Chardon Ave, Suite 1201
San Juan, PR 00918 Ph. 787-766-5656

Attorneys *(If Known)*
Hector A. Santiago-Romero

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | Injury | ☐ 380 Other Personal Property Damage | Relations | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | Exchange |
| | | | ☐ 751 Family and Medical Leave Act | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☒ 443 Housing/ Accommodations | ☐ 530 General | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 871 IRS—Third Party 26 USC 7609 | Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | **IMMIGRATION** | |
| | | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | |
| | | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

| **SOCIAL SECURITY** |
|---|
| ☐ 861 HIA (1395ff) |
| ☐ 862 Black Lung (923) |
| ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 864 SSID Title XVI |
| ☐ 865 RSI (405(g)) |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
Another District
*(specify)*

☐ 6   Multidistrict
Litigation -
Transfer

☐ 8   Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 3601-3619; 42 USC 12181-12189

Brief description of cause:
Violations to Fair Housing Act and American with Disabilities Act

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $
335,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE  2/27/2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____